## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**JOSHUA GONZALEZ**                                        **CIVIL ACTION**

**VERSUS**                                                **NO.  13-6180**

**BURL CAIN, WARDEN**                                      **SECTION "A"(4)**

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

## I.    Factual and Procedural Background

The petitioner, Joshua Gonzalez ("Gonzalez"),[2] is a convicted inmate incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[3]  On December 16, 2004, Gonzalez was indicted by a Grand Jury in Jefferson Parish for the second degree murder of Akbar Smith and the attempted second degree murder of Raymond Nelson.[4]  Gonzalez entered pleas of not guilty to the charges on December 20, 2004.[5]

---

[1]Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]In some state court records, petitioner's last name is spelled "Gonzales."

[3]Rec. Doc. No. 1.

[4]St. Rec. Vol. 3 of 5, Indictment, 12/16/04; Grand Jury Return, 12/16/04.

[5]St. Rec. Vol. 3 of 5, Minute Entry, 12/20/04.

The record reflects that, on October 22, 2004, Gonzalez called Joshua Nieves to purchase marijuana and cocaine.[6]  Nieves agreed to sell the narcotics to defendant for $400.00.  Nieves and the two victims, Akbar Smith and Raymond Nelson, devised a plan to rob Gonzalez instead of selling him narcotics.  According to their plan, Nieves would take Gonzalez's money and proceed on foot to retrieve the narcotics from an undisclosed location.  Smith would pretend to assault Nieves and take the money before Nieves could retrieve the narcotics.  Smith and Nieves would then flee with the money without transferring the drugs to Gonzalez.

At approximately 10:30 p.m., Nieves met Gonzalez at an apartment complex in Terrytown.  Gonzalez was suspicious and loaded his 9mm handgun and hid it in his pants.  As planned, Nieves took Gonzalez's money under the guise of obtaining the drugs from a hidden location.  As Nieves walked away, he passed a breeze way between apartment buildings.  Smith jumped out an pretended to knock him down.  Nieves fell to the ground and dropped the money.  Smith then picked up the money and fled.  Nieves immediately followed Smith and Gonzalez followed behind him.  Gonzalez began shooting at the men as they ran.  Nieves heard five or six shots and saw Smith fall to the ground.  Nieves did not see what Gonzalez was doing because it was dark.

A bullet fired from Gonzalez's gun entered the back of Smith's neck, severed his spinal cord, and killed him.  Nelson also was shot, although his location during the robbery was unclear.

After waiver of his right to jury trial, Gonzalez was tried before a judge on October 5, 2006, and was found guilty as charged of second degree murder and acquitted on the count of attempted

---

[6]The facts were taken from the published opinion of the Louisiana Fifth Circuit Court of Appeal on direct appeal.  *State v. Gonzalez*, 975 So.2d 3 (La. App. 5th Cir. 2007); St. Rec. Vol. 4 of 5, 5th Cir. Opinion, 07-KA-449, 12/27/07.

second degree murder.[7]   On October 20, 2006, the Trial Court sentenced Gonzalez to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.[8]

On direct appeal, Gonzalez's retained counsel argued that the Trial Court erred in finding Gonzalez guilty of second degree murder because the judge misstated the law on justifiable homicide and the evidence did not support the verdict where the judge had already stated that the conduct amounted only to criminal negligence.[9]   The Louisiana Fifth Circuit affirmed Gonzalez's conviction and sentence on December 27, 2007, finding no merit in the claim.[10]

On September 19, 2008, the Louisiana Supreme Court denied without reasons the writ application filed by Gonzalez's counsel.[11]   His conviction and sentence became final ninety (90) days later, on December 18, 2008, because he did not file a writ application with the United States Supreme Court.  *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. S. Ct. Rule 13(1).

On September 10, 2009, Gonzalez through different retained counsel filed an application for post-conviction relief in the Trial Court raising the following grounds for relief:[12] (1) the petitioner was denied due process and was prejudiced by prosecutorial misconduct, specifically, the State

---

[7]St. Rec. Vol. 3 of 5, Trial Minutes, 10/5/06; Trial Transcript, 10/5/06.

[8]St. Rec. Vol. 3 of 5, Sentencing Minutes, 10/20/06; Sentencing Transcript, 10/20/06.

[9]St. Rec. Vol. 3 of 5, Appeal Brief, 07-KA-449, 8/23/07.

[10]*Gonzalez*, 975 So.2d at 3; St. Rec. Vol. 4 of 5, 5th Cir. Opinion, 07-KA-449, 12/27/07.  The Court also instructed the Trial Court to notify Gonzalez of the delays for seeking post-conviction relief.

[11]*State v. Gonzalez*, 992 So.2d 949 (La. 2008); St. Rec. Vol. 4 of 5, La. S. Ct. Order, 2008-K-0228, 9/19/08; La. S. Ct. Writ Application, 08-K-0228, 1/28/08; St. Rec. Vol. 2 of 5, La. S. Ct. Letter, 2008-K-228, 1/29/08.

[12]St. Rec. Vol. 5 of 6, Application for Post-Conviction Relief, 4/22/12 (dated 4/12/12); Memorandum in Support, undated.

withheld a crime scene diagram in violation of *Brady*[13] which was evidence material to the distance between Gonzalez and Smith and the element of specific intent; (2) he was denied effective assistance of counsel where trial counsel failed to utilize Nieves pretrial statements to establish the distance between Gonzalez and Smith to contradict the element of specific intent; and (3) the cumulative effect of these errors mandated reversal of the conviction.  After receiving additional briefing and holding two hearings with counsel, the Trial Court denied the application at the second hearing held on November 15, 2013 because the evidence proved specific intent when Gonzalez admitted that he aimed his gun at Smith and fired.[14]

Gonzalez through counsel, sought review of this order in the Louisiana Fifth Circuit by presenting the following grounds for relief:[15] (1) the state district court erred by denying the application for post-conviction relief; (2) the ruling on the *Brady* claim was an unreasonable application of federal law and based on an unreasonable determination of the facts; (3) the ruling on the ineffective assistance of counsel claim was an unreasonable application of federal law and based on an unreasonable determination of the facts; (4) the state district court abused its discretion and violated due process in quashing subpoenas and denying an evidentiary hearing; (5) the state district court abused its discretion in failing to address the merits of the claims; and (6) trial counsel was ineffective by the failure to utilize the statement of the sole fact witness for impeachment.

In its reasoned decision denying relief on April 4, 2013, the Louisiana Fifth Circuit found that evidence of the distance from which Gonzalez aimed and shot at Smith would have made no

---

[13]*Brady v. Maryland*, 373 U.S. 83 (1963).

[14]St. Rec. Vol. 1 of 5, Minute Entry, 1/15/13; Minute Entry, 11/30/12; Minute Entry, 10/26/12; State's Response, 10/17/12; Gonzalez's Reply Brief, 10/23/12; *see also*, St. Rec. Vol. 4 of 5, 5th Cir. Order, 13-KH-05, 4/4/13 (indicating the district court's reasons for denial of relief).

[15]St. Rec. Vol. 4 of 5, 5th Cir. Writ Application, 13-KH-05, 1/2/13.

difference in the outcome of the case and was therefore immaterial to the *Brady* and ineffective assistance of counsel claims.[16]  On October 3, 2011, the Louisiana Supreme Court denied without stated reasons the writ application filed by Gonzalez's counsel.[17]

## II.    Federal Petition

On October 17, 2013, Gonzalez through counsel filed a federal petition for habeas corpus relief asserting four grounds for relief:[18] (1) the ruling on the *Brady* claim was an unreasonable application of federal law and based on an unreasonable determination of the facts; (2) the ruling on the ineffective assistance of counsel claim was an unreasonable application of federal law and based on an unreasonable determination of the facts; and (3) the state district court abused its discretion and violated due process in quashing subpoenas and denying an evidentiary hearing on the post-conviction claims.  Although not listed as an issue, Gonzalez also argues in the petition that the cumulative effect of these errors mandates reversal of his conviction.

The State filed a response in opposition to Gonzalez's petition conceding its timely filing. The State also argues that one facet of the first issue has not been properly exhausted and that the claims nevertheless all are without merit.[19]

---

[16]St. Rec. Vol. 4 of 5, 5th Cir. Order, 13-KH-05, 4/4/13.

[17]*State ex rel. Gonzales (sic) v. State*, 123 So.3d 1220 (La. 2013); St. Rec. Vol. 4 of 5, La. S. Ct. Order, 2013-KP-0968, 10/11/13; La. S. Ct. Writ Application, 13-KP-968, 4/30/13.

[18]Rec. Doc. No. 1.

[19]Rec. Doc. No. 12.

## III.  General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[20] applies to this petition, which was filed by Gonzalez's counsel on October 17, 2013.  The threshold questions on habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and the claims must not be in "procedural default."  *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State concedes the timeliness of the petition and does not raise a procedural default defense.  The State does argue that a portion of Gonzalez's first issue has not been properly exhausted.  Specifically, Gonzalez argues that the "withheld" crime scene diagram was material because it could have been used to impeach Nieves trial testimony.  To the extent this argument is not exhausted, it does not entitle Gonzalez to federal habeas relief and will be addressed without need for complete  exhaustion of state remedies.  28 U.S.C. § 2254(b)(2).

## IV.  Standards of a Merits Review

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000).  It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

---

[20]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996.  *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

A state court's determinations of questions of fact are presumed correct and the court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1) (2006).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA.  The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485.  The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." (citation omitted)  *White v. Woodall*, __ U.S. __, 134 S. Ct. 1697, 1706-07 (2014) (citing *Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 787 (2011) and *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)).  "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'"  *White*, 134 S. Ct. at 1706 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)).

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court

decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485.  A state court's decision can involve an "unreasonable application" of federal law if it correctly identifies the governing rule but then applies it unreasonably to the facts.  *White*, 134 S. Ct. at 1706-07; *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law.  *See Williams*, 529 U.S. at 410.  The Court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law.  *Id.*  "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'"  *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable."  *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002).  The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner.  *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006). In addition, review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits.  *Cullen v. Pinholster*, __ U.S. __, 131 S. Ct. 1388, 1398 (2011).

## V.   Evidentiary Hearing Not Warranted (Claim No. 3)

As an initial matter, the Court considers Gonzalez's claim that the state trial court erred in denying his post-conviction application without an evidentiary hearing and after quashing subpoenas for additional evidence and testimony.  This claim does not entitle Gonzalez to federal habeas corpus review or relief.

It is well settled doctrine that "infirmities in State habeas proceedings do not constitute grounds for relief in federal court."  *Rudd v. Johnson*, 256 F.3d 317, 319 (5th Cir. 2001).  An attack on the State habeas proceeding is an attack on a proceeding collateral to the detention and not the detention itself, which is the concern in federal habeas review.  *Id*., at 320; *see also*, *Drevino v. Johnson*, 168 F.3d 173, 180 (5th Cir. 1999); *see also*, *Lackawanna County Dist. Atty. v. Coss*, 532 U.S. 394, 402-403 (2001) (no constitutional mandate that states provide post-conviction review) (citing *Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987) (no constitutional right to state post-conviction review)).

Furthermore, Gonzalez is not entitled to a federal evidentiary hearing.  As discussed by the Supreme Court in *Cullen*, 131 S. Ct. at 1400-01, the decision to hold an evidentiary hearing is a statutorily mandated determination limited by the provisions of § 2254(e)(2), which restricts evidentiary hearings to those instances where the claim relies on a new rule of law retroactively applied on collateral review for which the predicate could not have been previously discovered with due diligence and where the facts would be sufficient to undermine a guilty verdict by clear and convincing evidence.  *See Cullen*, 131 S. Ct. at 1400-01.  The Court in *Cullen* further recognized that where these factors are not met, evidence presented for the first time on federal habeas review

9

may not be considered on federal habeas review to address the merits of the claims under §
2254(d)(1).  *Id.*

Thus, the federal habeas court is limited to review of only the evidence and record before
the state courts that reviewed the federal claim presented.  *See Cullen*, 131 S. Ct. at 1400; *Blue v.
Thaler*, 665 F.3d 647, 656 (5th Cir. 2011); *Gallow v. Cooper*,  505 F. App'x 285, 295-96 (5th Cir.
2012); *Thomas v. Thaler*, No. 12-50280, 2013 WL 1297269, at *4-*5 (5th Cir. Apr. 2, 2013).  In
other words, this Court does not consider evidentiary materials that were not first presented to the
state courts.

As addressed in the following discussion, Gonzalez is not entitled to federal habeas relief
based on his *Brady* or ineffective assistance of counsel claims.  He, therefore, has made no showing
of entitlement to relief from his conviction by clear and convincing evidence.  He also has not based
his claim on a new, retroactive rule of law under the provisions of § 2254(e)(2).  There is no basis
to grant an evidentiary hearing in this case.

**VI.**     **Crime Scene Diagram and Measurements under *Brady* (Claim No. 1)**

Gonzalez argues that the defense theory at trial was that he lacked specific intent to kill
Smith and therefore was not guilty of second degree murder.  He argues that the distance from which
he fired at Smith in the dark was a considerable factor in whether he had specific intent.  During
trial, the defense, and the prosecution, learned through the testimony of Detective Morales that a
supervising official police drew a diagram with measurements of the crime scene.  Gonzalez argues
that this diagram and related measurements taken by the officers were material to the defense theory
especially in light of the lack of significant evidence to link Smith's wound with Gonzalez's
weapon.  Gonzalez also contends that the state courts further erred in denying relief on this issue

based on the sufficiency of the evidence to support the verdict, which he argues is not a *Brady* factor.

As outlined above, Gonzalez raised this issue on post-conviction review and it was denied as meritless at each level of the state courts. *See Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991). In the last reasons decision on the issue, the Louisiana Fifth Circuit found that evidence of the distance from which Gonzalez admittedly aimed and shot at Smith was not material because it would not have altered the outcome of the case.

In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court required the States to produce exculpatory and impeachment evidence for reasons of due process. *Brady*, 373 U.S. at 87. The *Brady* disclosure requirement applies only to evidence that is exculpatory and material to guilt or that is impeachment evidence favorable to the defense. *Strickler v. Greene*, 527 U.S. 263, 282 (1999); *Brady*, 373 U.S. at 87. Claims pursuant to *Brady* involve "'the discovery of evidence after trial of information which had been known to the prosecution but unknown to the defense.'" *Lawrence v. Lensing*, 42 F.3d 255, 257 (5th Cir. 1994) (*quoting United States v. Agurs*, 427 U.S. 97, 103 (1976)). The Supreme Court later extended the *Brady* ideal and held that "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police. But whether the prosecutor succeeds or fails in meeting this obligation (whether, that is, a failure to disclose is in good faith or bad faith, *see Brady*, 373 U.S., at 87, 83 S. Ct., at 1196-1197) the prosecution's responsibility for failing to disclose known, favorable evidence rising to a material level of importance is inescapable." *Kyles v. Whitley*, 514 U.S. 419, 438 (1995).

*Brady* and *Kyles* do not, however, place any burden upon the prosecution to conduct a defendant's investigation or assist in the presentation of the defense's case. *United States v. Marrero*, 904 F.2d 251, 261 (5th Cir. 1990) (citations omitted); *Bigby v. Cockrell*, 340 F.3d 259, 279 (5th Cir. 2003). Thus, "when information is fully available to a defendant at the time of trial and his only reason for not obtaining and presenting the evidence to the Court is his lack of reasonable diligence, the defendant has no *Brady* claim." *United States v. Brown*, 628 F.2d 471, 473 (5th Cir. 1980); *Kutzner v. Cockrell*, 303 F.3d 333, 336 (5th Cir. 2002) (holding that *Brady* does not require prosecutors to furnish a defendant with exculpatory evidence if that evidence is fully available to the defendant through an exercise of reasonable diligence); *Rector v. Johnson*, 120 F.3d 551, 558-59 (5th Cir. 1997) (holding that the State has no duty to lead the defense toward potentially exculpatory evidence if the defendant possesses the evidence or can discover it through due diligence).

The Supreme Court, however, made clear that "the Constitution is not violated every time the government fails or chooses not to disclose evidence that might prove helpful to the defense." *Kyles*, 514 U.S. at 436-37. "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *Agurs*, 427 U.S. at 109-110 (emphasis added).

Instead, three factors must be considered to evaluate an alleged *Brady* violation: (1) the evidence at issue must be material, that is favorable to the accused either because it is exculpatory or because it is impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued. *Banks v. Dretke*, 540 U.S. 668, 691 (2004) (quoting *Strickler*, 527 U.S. at 281-82). Evidence is material under *Brady* "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would

have been different." *Kyles*, 514 U.S. at 433.  Moreover, "a reasonable probability does not mean that the defendant 'would more likely than not have received a different verdict with the evidence,' only that the likelihood of a different result is great enough to 'undermine[] confidence in the outcome of the trial.'" *Smith v. Cain*, __ U.S. __, 132 S. Ct. 627, 630 (2012) (*quoting Kyles*, 514 U.S. at 434).

A claim under *Brady* is a mixed question of law and fact.  *Higgins v. Cain*, 434 F. App'x 405, 406 (5th Cir. 2011) (citing *Banks v. Thaler*, 583 F.3d 295, 309 (5th Cir. 2009)).  Under the applicable standard of review, this court therefore must determine if the state court's decision to denying relief was contrary to or involved an unreasonable application of Supreme Court precedent.

As an initial premise, Gonzalez bases his argument on faulty grounds.  The state courts did not err under federal law in assessing whether the diagram would have had an impact on the verdict. As outlined above, evidence is material under *Brady* when there is a reasonable probability that the <u>result</u> of the proceeding would have been different.  The state courts' determination that the diagram or the distance Gonzalez was from Smith would not have impacted the verdict inherently means that the courts considered the probability that the result of the trial would not have been different.

Further, with particular consideration of the *Brady* factors, Gonzalez has not established that the denial of relief was contrary to federal law.  First, Gonzalez has not demonstrated that the State withheld evidence, the diagram or the measurements, that was exculpatory or favorable impeachment evidence.  As for the "withholding," Gonzalez has not shown that the diagram and related information was not known to the defense until <u>after</u> trial as addressed by the *Brady* doctrine. While it may not have been obtained by the defense until later, the existence of the diagram and its

incorporated measurements were first disclosed by Detective Morales <u>during</u> trial.  The Court questions whether these items constitute withheld evidence under *Brady.*

Furthermore, Gonzalez has not established that the diagram and measurement information was exculpatory.  The distance of his car from the bullet and/or Smith would not demonstrates his lack of culpability for the murder nor prove his lack of specific intent to kill.

First, Gonzalez did not deny at trial that he shot the bullet that hit Smith.[21]  His defense was that he did not have intent to kill when he shot his weapon at the fleeing men.  The suggestion in his brief now that he may not have shot the fatal bullet is novel and contrary to the trial defense of his guilt of only manslaughter or criminal negligence.

Nevertheless, Gonzalez also admitted at trial that, because he thought he was being scammed, he started to follow Nieves as he walked away with the money.[22]  Gonzalez stated that he was only 10 or 15 feet behind Nieves when Nieves was assaulted by Smith.[23]  When the two men ran, Gonzalez admittedly chased them around the corner of the apartment building, until he saw Nelson approaching.[24]  Gonzalez also testified, "At first I was runnin' after Akbar Smith."[25]  As he decided to return to his car, he <u>pointed</u> his gun <u>at</u> them and fired three shots.[26]  At trial, Gonzalez testified that he was about 40 or 50 feet from the men and was surprised he hit them.[27]  The exact

---

[21]*Id.*, p. 65.

[22]St. Rec. Vol. 3 of 5, Trial Transcript, pp. 55-56, 10/5/06.

[23]*Id.*, p. 56.

[24]*Id.*

[25]*Id.*, p. 64.

[26]*Id.*, p. 57.

[27]*Id.*, p. 58.

location of his car in the parking lot which was around the corner from where he shot compared to the location of the bullet casing and Smith's body would not have been exculpatory evidence.

Gonzalez admitted throughout that he shot his weapon as the men ran <u>away</u> from him, when there was no threat to him.  There was ample evidence presented at trial regarding the darkness and the distance he was from Smith when he fired.  Gonzalez repeatedly referenced the darkness and his inability to clearly see the men at the distance he was from them.  Nieves also attested to the significant distance, up to 60 or 70 yards, between him and Gonzalez.  The diagram and measurements would not be material under *Brady* where it is merely cumulative of other evidence already before the factfinder.  *Spense v. Johnson*, 80 F.3d 989, 995 (5th Cir. 1996).

As for any alleged impeachment value, Gonzalez's argument also falls short under *Brady* and its progeny.  Gonzalez suggests that the measurements taken by police and the diagram could have been used for impeachment purposes.  The only specific witness noted by counsel in the petition is Nieves.  As conceded in his argument, however, the defense already had favorable evidence of Nieves statements about the distances between the men that night.  The diagrams and measurements may have been helpful in emphasizing those distances, they were not impeachment evidence.  Also, under *Brady*, helpful does not equate to material.  *Agurs*, 427 U.S. at 109-110.

Conceding for the sake of argument that the second factor, that evidence was inadvertently suppressed, Gonzalez has failed to establish that any prejudice ensued from the failure to disclose the diagrams and measurements at an earlier time.  Gonzalez has not shown that the diagram and measurements created a reasonable probability that the verdict would have been different.  The evidence adduced at trial demonstrated that he knowingly fired his weapon at Smith and Nieves as they ran away from him.  It may have been poorly lit and they may have been yards from him, but

he actively pursued the men and drew his weapon to fire it as they ran away.  By his own testimony, however, Gonzalez demonstrated that Smith and Nieves were only 40 to 50 feet from him when he fired because he had been following or chasing them.  The distance back to his car from that point was not relevant and its absence from trial was not prejudicial.  The Court also notes that evidence of this distance was discernable from Nieves's statements as conceded by Gonzalez in his brief.

None of this creates a reasonable probability that the outcome would have been different had the defense had the diagram and measurements at trial.  Gonzalez testified that he shot at Smith as Smith ran from him.  His earlier statement to police was clear that he was aiming at Smith when he shot.  His trial testimony that he wanted only to scare the men who were already running from him was incongruous and a matter of credibility for the factfinder.  That notwithstanding, his lack of intent to kill, no matter his distance, was defied by his aggressive actions that night.

Further, while Gonzalez may have voiced surprise that Smith was struck, he told police he aimed his weapon at the man running away with his money.  Gonzalez even explained that he was surprised that Nelson also was struck because he was aiming at Smith.  Gonzalez has not demonstrated that any distance or any measurement could have altered the fact that he aimed and shot at the man now known to be Smith.  The diagram and distances were not exculpatory or material under *Brady*.

The state courts' denial of relief on this issue was not contrary to, or an unreasonable application of, Supreme Court precedent.  Gonzalez is not entitled to relief on this issue.

## VII.   Effective Assistance of Trial Counsel (Claim No. 2)

Gonzalez alleges that his trial counsel was ineffective for failing to use Nieves's pretrial statements to establish the distance between Gonzalez and Smith to contradict the element of

specific intent.  He argues that his counsel should have used Nieves's statement that Gonzalez was closer to his car and close to 60 or 70 yards from him and Smith when he first fired his weapon.  He also did not use the statement to impeach Nieves at trial when he denied seeing Nelson in the area of the shooting.

Gonzalez raised these claims on post-conviction review and was denied relief at each level of the state courts.  *Ylst*.  In its reasoned decision, the Louisiana Fifth Circuit resolved that, in light of Gonzalez's concessions about the shooting, the distance evidence was immaterial to the assessment of his claim.

The issue of ineffective assistance of counsel is a mixed question of law and fact.  *Clark v. Thaler*, 673 F.3d 410, 416 (5th Cir. 2012); *Woodfox v. Cain*, 609 F.3d 774, 789 (5th Cir. 2010).  The question for this Court is whether the state courts' denial of relief was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court.

The Supreme Court's holding in *Strickland v. Washington*, 466 U.S. 668 (1984), is the appropriate standard for judging the performance of counsel.  In *Strickland*, the Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom.  *See Strickland*, 466 U.S. at 697.  The petitioner has the burden of proving ineffective assistance of counsel by a preponderance of the evidence.  *Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000); *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1992).  In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test.  *Amos v. Scott*, 61 F.3d 333, 348 (5th Cir. 1995).

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001). "The defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. The analysis of counsel's performance must take into account the reasonableness of counsel's actions under prevailing professional norms and in light of all of the circumstances. *See Strickland*, 466 U.S. at 689; *Carty v. Thaler*, 583 F.3d 244, 258 (5th Cir. 2009). The reviewing court must "judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *Harrington*, 131 S. Ct. at 787 (citing *Strickland*, 466 U.S. at 689). "[I]t is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Bell*, 535 U.S. at 697 (citing *Strickland*, 466 U.S. at 689). As a result, federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise. *Strickland*, 466 U.S. at 689; *Johnson v. Dretke*, 394 F.3d 332, 337 (5th Cir. 2004) (counsel's "'conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.'") (quoting *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002)); *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008).

In order to prove prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Williams v. Thaler*, 602 F.3d 291, 310 (5th Cir. 2010). Furthermore,

"[t]he petitioner must 'affirmatively prove,' and not just allege, prejudice." *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 695). In this context, "a reasonable probability is a probability sufficient to undermine confidence in the outcome." *Cullen*, 131 S. Ct. at 1403 (quoting *Strickland*, 466 U.S. at. 694). This standard requires a "substantial," not just "conceivable," likelihood of a different result. *Harrington*, 131 S. Ct. at 792. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett v. McCotter*, 796 F.2d 787, 793 (5th Cir. 1986). Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

On habeas review, the United States Supreme Court has clarified that, in applying *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Harrington*, 131 S. Ct. at 788. The *Harrington* Court went on to recognize the high level of deference owed to a state court's findings under *Strickland* in light of AEDPA standards of review:

> The standards created by *Strickland* and §2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.,* at 788 (citations and quotation marks omitted).

Thus, scrutiny of counsel's performance under § 2254(d) therefore is "doubly deferential." *Cullen*, 131 S. Ct. at 1403 (quoting *Knowles*, 556 U.S. at 123). The federal courts must take a "highly deferential" look at counsel's performance under the *Strickland* standard through the "deferential lens of § 2254(d)." *Id.* (citing *Strickland*, 466 U.S. at 689, and quoting *Knowles*, 556 U.S. at 121 n.2).

Gonzalez's recitations of the facts adduced from Nieves's statement and trial testimony are overly narrow. In his statement and at trial, Nieves testified that he left Gonzalez near the car when he walked off to pretend to get the drugs. He stated that this was about 60 to 70 yards from where Smith went down. Before the shooting, he last saw Gonzalez as Gonzalez was moving away from the car to near the grassy area to watch where Nieves walked to get the drugs.[28] Nieves told the officers that, when Smith jumped him, Gonzalez had already "com[e] from the side of the building" to see what was happening.[29] Nieves also testified that once he started running, he did not look back to see Gonzalez shoot. He repeated this at trial.[30]

Gonzalez has not established how counsel could have used the statements or the measurements to better benefit the defense. He has not shown a significant difference in Nieves testimony that would have established a lack of specific intent, especially in light of Gonzalez's own statement and testimony.

---

[28]St. Rec. Vol. 4 of 5, Nieves's Statement, p. 17 of 20, 10/23/04.

[29]*Id.*, p. 14 of 20.

[30]St. Rec. Vol. 3 of 5, Trial Transcript, pp. 18, 25, 10/5/06.

For example, Gonzalez told police in his statement and testified at trial that he moved away from his car to follow Nieves because he suspected that he was being robbed.[31]  He testified that he then took off running like an athlete after them as they ran away.[32]  He admitted making it around the corner where he saw Nelson.[33]  He estimated at trial that he was only 40 to 50 feet from them when he fired.[34]  In his statement it was 50 to 60 feet.[35]  Nieves did not see any of this as he continued to run away from Gonzalez.

As for Raymond Nelson's location, Gonzalez takes Nieves's quote out of context.  In his police statement, Nieves was asked where Nelson was during the incident.  He indicated that he met up with Nelson at the corner <u>after</u> the shooting, and Nelson told him he too had been hit.[36]  He went on to say that while he and Smith were running, "Raymond, Raymond I really wouldn't (sic) paying attention I don't know where he was at like he was running way ahead of us I know that he was running too but I didn't pay attention to where he was running. . ."[37] (emphasis added).  At trial, Nieves similarly testified that he did not see Raymond while they were running.[38]

Had counsel harped on the location of Nelson, it could have emphasized Nieves's claim that Nelson was actually farther from (not closer to) Gonzalez during the shooting.  Gonzalez claimed

---

[31]St. Rec. Vol. 5 of 5, Gonzalez's Statement, p. 8 of 20, 10/24/04; St. Rec. Vol. 3 of 5, Trial Transcript, pp. 55-56, 10/5/06.

[32]*Id*.; St. Rec. Vol. 3 of 5, Trial Transcript, p. 56, 10/5/06.

[33]St. Rec. Vol. 3 of 5, Trial Transcript, p. 57, 10/5/06.

[34]St. Rec. Vol. 3 of 5, Trial Transcript, p. 58, 10/5/06.

[35]St. Rec. Vol. 5 of 5, Gonzalez's Statement, p. 12 of 20, 10/24/04.

[36]St. Rec. Vol. 4 of 5, Nieves's Statement, p. 15 of 20, 10/23/04.

[37]*Id*., p. 17 of 20.

[38]St. Rec. Vol. 3 of 5, Trial Transcript, pp. 16, 25, 10/5/06.

that he stopped chasing Smith and Nieves when he saw Nelson.  In his statement to police, Nieves indicated that Nelson was running ahead of him and Smith.  This was in conflict with Gonzalez's testimony.  Had counsel pressed the issue of Nelson's location with Nieves, it could have undermined the veracity of Gonzalez's testimony.  Reasonable counsel would not have risked this since Gonzalez claimed that the presence of Nelson was the only reason he stopped chasing the other men, also impacting the distance issue.

A complete and thorough reading of the transcripts does not reflect inconsistencies of the type that reasonable counsel was required to have used to impeach Nieves at trial.  The minor discrepancies in Nieves's statements are not remarkable.  He was consistent in that he did not know exactly where Nelson was in the dark as he ran from the shots being fired at him by Gonzalez.  He was consistent in his recollection that he last saw Gonzalez at a significant distance from him and Smith as they ran off with the money.

For these reasons, Gonzalez has not demonstrated that counsel was deficient in failing to pursue further cross-examination of Nieves on these points or that the failure to do so was prejudicial to the defense. "The decision whether to cross-examine a witness, and if so, how vigorously to challenge the witness' testimony, requires a quintessential exercise of professional judgment." *Ford v. Cockrell*, 315 F. Supp. 2d 831, 859 (W.D. Tex. 2004), *aff'd*, 135 F. App'x 769 (5th Cir. 2005).  The Supreme Court has cautioned courts not to second-guess counsel's decisions on such matters through the distorting lens of hindsight; rather, courts must employ a strong presumption that counsel's conduct falls within a wide range of reasonable assistance and, under the circumstances, might be considered sound trial strategy. *Strickland*, 466 U.S. at 689.

Counsel's choices as to how to proceed with the evidence before him at the time is entitled to deference.  The state courts found that the diagram and distance evidence was not relevant to assessing counsel's performance at trial.  In light of the circumstances of the case, that conclusion also is entitled to deference.  Petitioner simply has not met his burden with respect to this claim and he has not demonstrated that there is a reasonable probability that the result of his trial would have been different if his counsel had challenged Nieves statements differently.

Relief on this claim was properly denied by the state courts and the denial was not contrary to *Strickland*.  Gonzalez is not entitled to relief on this point.

## VIII. <u>Cumulative Error</u>

Gonzalez argues that the *Brady* and ineffective assistance of counsel errors, when considered together, undermine the reliability of his trial.  The State argues that Gonzalez has not established a basis for habeas relief and there can be no cumulation of error.

The United States Fifth Circuit has recognized that "although rare," "instances of cumulative trial errors may 'fit the Supreme Court's description of a denial of due process as 'the failure to observe that fundamental fairness essential to the very concept of justice.'"  *Perez v. Dretke*, 172 F. App'x 76, 81-82 (5th Cir. 2006) (quoting *Derden v. McNeel*, 978 F.2d 1453, 1457 (5th Cir. 1992)).  However, in *Derden*, the Fifth Circuit held that "federal habeas corpus relief may only be granted for cumulative errors in the conduct of a state trial where (1) the individual errors involved matters of constitutional dimension rather than mere violations of state law; (2) the errors were not procedurally defaulted for habeas purposes; and (3) the errors 'so infected the entire trial that the resulting conviction violates due process.'"  *Derden*, 978 F.2d at 1454 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).

In this instance, Gonzalez has failed to identify any constitutional error arising out of his state criminal proceedings.  Without some cognizable error, he has not provided a basis for the Court to consider any alleged cumulative prejudicial effect.  "[W]here individual allegations of error are not of constitutional stature or are not errors, there is 'nothing to cumulate.'"  *Turner v. Quarterman*, 481 F.3d 292, 301 (5th Cir. 2007) (quoting *Yohey v. Collins*, 985 F.2d 222, 229 (5th Cir. 1993), and citing *Miller*, 200 F.3d at 286 n.6; *United States v. Hall*, 455 F.3d 508, 520 (5th Cir. 2006)).

The same is true of his claims regarding the assistance of trial counsel.  If the individual claims are meritless, that result cannot be changed simply by asserting the same claims collectively.  "[I]neffective assistance of counsel cannot be created from the accumulation of acceptable decisions and actions."  *Hall*, 455 F.3d at 520 (citing *Miller*, 200 F.3d at 286 n.6); *Sholes v. Cain*, 370 F. App'x 531, 535 (5th Cir. 2010); *Mullen v. Blackburn*, 808 F.2d 1143, 1147 (5th Cir. 1987) (with respect to cumulation of meritless claims, "Twenty times zero equals zero.").

Accordingly, Gonzalez has not shown his entitlement to consideration of or relief on the theory of cumulative error arising from the claims raised.  He is not entitled to relief on this claim.

## IX.   <u>Recommendation</u>

For the foregoing reasons, it is **RECOMMENDED** that Gonzalez's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district

court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[39]

New Orleans, Louisiana, this 29th day of July, 2014.

_____

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[39]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.